UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

NAVJOT S.,

      Petitioner,

      v.

WARDEN OF THE GOLDEN STATE
ANNEX DETENTION FACILITY,

      Respondent.

No. 1:26-cv-00311-TLN-CSK

**ORDER**

This matter is before the Court on Petitioner Navjot S.'s ("Petitioner") Petition for Writ of Habeas Corpus (ECF No. 1), which this Court has construed as a Motion for Temporary Restraining Order ("TRO") based on Petitioner's brief and the relief requested therein (ECF No. 4). The Court ordered Respondents to submit a response to Petitioner's request for immediate injunctive relief. (ECF No. 4.) Respondents filed a Motion to Dismiss Petition for Writ of Habeas Corpus, which the Court understands to be the response Respondents were ordered to submit. (ECF No. 7.) Petitioner filed a reply. (ECF No. 11.) For the reasons set forth below, Petitioner's Motion for TRO is GRANTED.

///

///

///

1

## I.   FACTUAL BACKGROUND[1]

Petitioner is a native and citizen of India who entered the United States on or about September 21, 2022.  (ECF No. 7-1 at 2.)  Petitioner was subsequently issued a Notice to Appear and ordered to appear before an immigration judge in San Francisco.  (*Id.*)  In the time since, Petitioner resided in Fresno, California, and was subject to ICE supervision.  (ECF No. 1 at 5; ECF No. 11 at 3.)  Petitioner has a one-year-old daughter for whom he provides medical care.  (ECF No. 1 at 6.)  Petitioner submits that he has a pending asylum case and has never missed any appointments with ICE.  (*Id.*)

Respondents filed documents indicating that Petitioner was arrested by the Fresno Police Department on December 4, 2025, for felony spousal abuse and misdemeanor child abuse.  (ECF No. 7-2 at 6.)  The record is devoid of any further information on the grounds for the arrest, what transpired before or after the arrest took place.  (*See generally id.*)  However, Petitioner was presumably released from custody because the following day, December 5, 2025, he received a call from ICE concerning an office visit on December 8, 2025.  (ECF No. 1 at 5.)  When Petitioner reported to ICE on December 8, 2025, he was detained and taken to the Golden State Annex Detention Facility.  (*Id.* at 5–6.)  Petitioner submits that he was given no information beyond being told that he was being detained.  (*Id.* at 5.)

On January 15, 2026, Petitioner filed a Petition for Writ of Habeas Corpus.  (*Id.* at 1.)  Petitioner challenges his detention as violating his due process rights and seeks immediate release.  (*Id.* at 17.)

## II.   STANDARD OF LAW

For a TRO to issue, courts consider whether Petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner

---

[1]   These facts are taken from Petitioner's habeas petition and Respondents' records.  (ECF Nos. 1, 7–7-2.)  Respondents do not dispute Petitioner's recitation of facts.  (*See generally* ECF No. 7.)

must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Court may weigh Petitioner's showing on each of the *Winter* factors using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, if "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

### III.    ANALYSIS

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

#### A.    Likelihood of Success on the Merits

Petitioner argues that his continued detention without a hearing violates his due process rights. (ECF No. 1 at 16–17.) In opposition, Respondents argue Petitioner is an "applicant for admission" subject to the mandatory detention framework of 8 U.S.C. § 1225(b)(2)(A) ("§ 1225(b)(2)"). (ECF No. 7 at 2.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings, including deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

the question remains what process is due.").

*a) Liberty Interest*

"Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). To determine whether an individual's specific conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025).

Here, Petitioner gained a protected liberty interest in his continued freedom when he was released from immigration custody and allowed to reside in the United States under ICE supervision for approximately three years. (ECF No. 1 at 5.) Under *Morrissey*, this release was an implied promise that Petitioner would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. Petitioner submits that he never missed any appointments with ICE. (*Id.* at 6.) Respondents do not dispute this, nor do they claim Petitioner violated the terms of his release or was re-detained because of his arrest by local authorities. (*See generally* ECF No. 7.) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his immigration and asylum proceedings. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Respondents' argument that Petitioner is subject to mandatory detention under § 1225(b)(2) does not bear on this Court's analysis. The vast majority of courts across this Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2). *See e.g.*, *Hortua v. Chestnut, et al.*, No. 1:25-cv-01670-TLN-JDP, 2025 WL

4

3525916 at *3(E.D. Cal. Dec. 9, 2025); *Armando Modesto Estrada-Samayoa v. Orestes Cruz, et al.*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). Respondents put forth no compelling argument to the contrary.

Petitioner therefore has a liberty interest in his release from immigration detention protected by the Due Process Clause.

*b) Procedural Due Process*

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

As to the first *Mathews* factor — Petitioner's private interest — Petitioner has a substantial private interest in remaining free from detention. Petitioner has lived in the United States for approximately three years and has a one-year-old daughter who he provides medical

5

care for.  (ECF No. 1 at 6.)  Petitioner's continued detention prevents him from continuing to live freely and care for his daughter.  *See Doe v. Becerra*, 787 F. Supp. 3d at 1094 (finding similarly).

As to the second *Mathews* factor — the risk of erroneous deprivation — the Court finds the risk here is considerable where Petitioner has received virtually no procedural safeguards such as a bond or custody redetermination hearing.  *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Although Respondents filed documentation of Petitioner's criminal history, they do not argue Petitioner's arrest by local authorities, who presumably released him, warrants immigration detention.  Nor do Respondents claim Petitioner now poses a danger to the community or has violated the terms of his release.  On this record, the fact that Petitioner has a prior arrest only highlights the necessity of procedural safeguards where a neutral decisionmaker can consider all facts and evidence to determine whether Petitioner's detention is now justified.  *See Doe*, 787 F. Supp. 3d at 1094 (noting the same); *see also R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.").

As to the third *Mathews* factor, the government's interest in detaining Petitioner without a hearing before a neutral decisionmaker is negligible.  *R.D.T.M.*, 2025 WL 2686866 at *6.  Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."  *Hernandez*, 872 F.3d at 994.  Here, Respondents have identified no legitimate interest in detaining Petitioner.  Instead, Petitioner's asylum application is pending and there is no indication he has a final order of removal.  (ECF No. 1 at 6.)  Although Respondents submitted documentation of Petitioner's prior arrest, they do not argue he is a danger to the community.

The cost and time of procedural safeguards are minimal.  Notice and custody determination hearings are routine processes for Respondents, and any delay in re-detention (if justified) for time to provide notice and a hearing would be minimal.  It would also be less of a

fiscal and administrative burden for the Government to return Petitioner home to await a determination on his immigration and asylum proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

On balance, Petitioner was owed notice and a hearing before a neutral decisionmaker to determine whether detention was warranted prior to re-detention. He was denied this process. Accordingly, Petitioner has shown he is likely to succeed on the merits of his due process claim.

### B.    Irreparable Harm

Petitioner has established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. (ECF No. 1 at 6.) Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a determination on his immigration and asylum proceedings. Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm."). In addition to harms imposed by his continued immigration detention, Petitioner has shown he is likely to succeed on the merits of his constitutional claim. The Court thus finds Petitioner has demonstrated irreparable harm.

### C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F.

Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  The Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Rather, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.  Additionally, and as noted above, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  In sum, the last two *Winter* factors also weigh in Petitioner's favor.

Having found Petitioner has satisfied each of the *Winter* factors, the Court GRANTS Petitioner's Motion for a TRO and orders Petitioner's immediate release on the same terms as he was released prior to his detention.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.")

**IV.    CONCLUSION**

IT IS HEREBY ORDERED:

1. Petitioner's Motion for Temporary Restraining Order is GRANTED (ECF No. 1).

2. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011);

3. Petitioner shall be RELEASED IMMEDIATELY from Respondents' custody;

4. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a hearing before a neutral fact-finder where Respondents show: (a) material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

5. Respondents are ordered to SHOW CAUSE why this Court should not grant Petitioner's habeas petition and enter judgment in favor of Petitioner.  Respondents shall file responsive papers by **Monday, February 16, 2026**.  Petitioner may file a reply by **Thursday, February 19, 2026**.  The parties shall indicate in their briefing whether they request a hearing.

6. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the TRO on two days' notice to Petitioner.  Fed. R. Civ. P. 65(b)(4).

7. The matter is not set for a hearing, though the Court may set one should it later be determined that a hearing is necessary.

IT IS SO ORDERED.

Date: February 10, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

9